**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **CONGRUENT MEDIA RESOURCING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**TRUSTWISE INC.,**<br><br>Defendant. | C.A. No. 7:26-cv-00432<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

# ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Congruent Media Resourcing LLC files this Original Complaint for Patent Infringement against Trustwise Inc. and would respectfully show the Court as follows:

## I. THE PARTIES

1. Plaintiff Congruent Media Resourcing LLC ("Plaintiff") is a Texas limited liability company with a principal place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

2. On information and belief, Defendant Trustwise Inc. ("Defendant"), is a corporation organized and existing under the laws of Delaware with its U.S. headquarters at 3310 W. Braker Ln., Suite 300, #643, Austin, Texas 78758. Defendant's registered agent is Cogency Global Inc. at 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant maintains a place of business at 3310 W. Braker Ln., Suite 300, #643, Austin, Texas 78758.

5. Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in Texas and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within Texas and this District. Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 3310 W. Braker Ln., Suite 300, 643, Austin, Texas 78758. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

## III. UNITED STATES PATENT NO. 9,135,418

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On September 15, 2015, United States Patent No. 9,135,418 ("the '418 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '418 Patent is titled "System and Method for Creating Secure Applications." A true and correct copy of the '418 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Congruent Media Resourcing LLC is the assignee of all right, title, and interest in the '418 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '418 Patent. Accordingly, Congruent Media Resourcing LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '418 Patent by Defendant.

11. The invention in the '418 Patent relates to systems and methods for creating secure workspaces and applications, including the management and enhancement of same. (Ex. 1 at 1:16-19). The goal of the '418 Patent is to reduce security breaches by creating secure workspaces and applications. (*Id.* at 1:16-38). To do this, the '418 Patent discloses imposing functions, such as intercepts, that convert an unsecured target application to a secure application. (*Id.* at 1:54-57). These functions may be considered as an actual replacement of existing instruction or a new instruction that may interrupt program flow and conditionally return control to the program flow. (*Id.* at 1:66-2:3). By adding these functions, the behavior of the secure application can be different from the original behavior of the target application. (*Id.* at 1:57-61). The '418 Patent explains that when these functions are added to the targeted application, the now secure application can be repackaged with the additional functions integrated with the original file. (*Id.* at 2:4-6).

12. The '418 Patent provides details regarding how application securitization occurs. Specifically, it discloses that one way application wrapping may occur is via an automated process

in which no source code is modified, thereby reducing programmer oversight and errors. (*Id.* at 12:19-26). Additionally, the '418 Patent provides examples of this, including 1) replacing references to system services with references to a library that applies the necessary mechanisms and policies and 2) inserting secure references into the code of an application to replace non-secure references. (*Id.* at 12:24-35). Specifically, this securitization process may include interposing system API calls to allow a secure framework to intercept and control application functions. (*Id.* at 21:43-49). This process may further include encryption for additional protection of applications. (*Id.* at 21:49-58). One major benefit may be that management layers may be injected onto the compiled applications, removing the need for source code or developer implemented application changes. (*Id.* at 12:36-47).

13. The '418 Patent also discloses technical examples of the use of securing applications via an intercept. One example method is called byte code injection, which replaces byte code API calls with intercepts. (*Id.* at 22:45-51). This is particularly useful for applications formatted for the Android operating system. (*Id.*; *also* Figure 11; 23:45-60). Another disclosed technical method is to link replacement calls for native object code. (*Id.* at 22:51-57). This method is useful for applications that use native code and do not run under a virtual machine. (*Id.*). An example of this type of injection is link injection, which replaces preexisting system calls or includes new instructions in an immutable entity. (*Id.* at 24:64-25:24). The '418 Patent further discloses that linking order may be statically or dynamically linked, and that priority can be established during runtime. (*Id.* at 25:6-17). Finally, a system of obfuscation may prevent further modification or reversal of the securitization process. (*Id.* at 25:15-17).

14. The '418 Patent further discusses the technical benefits of repackaging the target application during a reconstruction phase. (*Id.* at 24:3-21). This is performed by a repackager.

(*Id.* at 3-7). The repackager may be made of software or hardware elements and may be further modified by secure object references injected before. (*Id.* at 24:7-9). In addition, this reconstructed and modified application may need a new certificate to be trusted. (*Id.* at 24:11-16).

**<u>Asserted Independent Claim</u>**

15. Claim 1 of the '418 Patent claims:

> A method of operating a secure application, comprising:
>
> receiving a request to activate the secure application through an input device, wherein the secure application was created from a target application having a first set of functions associated with a first application behavior and the secure application has a second set of functions that are imposed on the first set of functions and that are associated with a second application behavior:
>
> in response to the receipt of the request, forcing the secure application to override the first application behavior with the second application behavior, wherein the second application behavior takes priority over the first application behavior; and
>
> via a processing unit, performing the second application behavior.

## IV. <u>COUNT I</u>
## <u>(PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,135,418)</u>

16. On information and belief, Defendant has directly infringed claims 1-4 of the '418 Patent in Texas, in this District, and elsewhere in the United States, by using and performing the claimed method by using the Trustwise AI Control Tower ("Accused Instrumentality").

17. **<u>Direct Infringement</u>**. As explained below, Trustwise AI Control Tower performs a method of operating a secure application. Trustwise AI Control Tower is used to provide run-time protection to AI applications. It operates a secure application by providing guardrail features that prevent certain types of attacks that may otherwise occur due to an unsecured AI application. Trustwise AI Control Tower evaluates AI interactions to operate a secure application by providing real time, inline protection using a specialized monitoring, control and governance framework.




(*E.g.*, https://trustwise.ai/solutions/).




(*E.g.*, https://trustwise.ai/solutions/by-use-case/).

18. Trustwise AI Control Tower practices the step of receiving a request to activate the secure application through an input device, wherein the secure application was created from a target application having a first set of functions associated with a first application behavior and the secure application has a second set of functions that are imposed on the first set of functions and that are associated with a second application behavior. Architecturally, Trustwise AI Control Tower operates on a target application in order to activate a secure application. Target applications include, but are not limited to, Knowledge Assistants, Tool Agents, Transaction Agents, or Autonomous Systems. Each of the target applications has a first set of functions associated with

a first application behavior. On information and belief, for instance, an internal AI app or chatbot may utilize one or more large language models and further access internal databases in an enterprise. This behavior, if uncontrolled and unsecured, may result in a first application behavior that is not secure. Trustwise describes how this unchecked first application behavior may need to be made secure via a second application behavior (*e.g.*, allowing, detecting/logging, blocking, redacting PII, and so on) based on organizational policy configurations. Trustwise further describes that detection with specialized models prevents security problems such as PII exposure or prompt injection.




(*E.g.*, https://trustwise.ai/product/ai-control-tower/).

19. Trustwise AI Control Tower practices the step of, in response to the receipt of the request, forcing the secure application to override the first application behavior with the second application behavior, wherein the second application behavior takes priority over the first application behavior. After a request is received, AI Control Tower overrides the first application behavior with the second application behavior. In the example below, a prompt is inspected and a response is also inspected. Policy actions such as authorize, block, escalate, or degrade may be

applied before they execute with PII redaction and tool-call authorization in line, per an organizational policy configuration. Trustwise explains how AI Control Tower provides second application behavior that takes priority over first application behavior. Examples of allow, flag, block, redact, or modify are shown below. Importantly, Trustwise explains how AI Control Tower operates on an inline basis, which indicates how Trustwise operates on a target application's and an associated first application behavior. Trustwise AI Control Tower explains why AI Control Tower is used to protect against first application behaviors. A non-limiting example of a first application behavior that may be replaced with a second application behavior is a harmful output from the first application. Publicly available videos explain how AI Control Tower works step by step in order to determine how to operate.




(*E.g.*, https://www.youtube.com/watch?v=Gp50-qZ0GmM&t=37s at 1:02).




(*E.g.*, https://www.youtube.com/watch?v=Gp50-qZ0GmM&t=37s at 1:08).




(*E.g.*, https://www.youtube.com/watch?v=Gp50-qZ0GmM&t=37s).

20. Trustwise AI Control Tower performs the step of, via a processing unit, performing the second application behavior. AI Control Tower provides an in-line, real-time system that

operates to block or prevent risky prompts or AI-based actions. AI Control Tower is able to provide enforcement actions which include second application behavior. The use cases are explained in the Use Case page on the Trustwise company website. For instance, a target application behavior which is flagged as a policy risk may be blocked, escalated, degraded, or put into an authorization workflow before the action reaches other enterprise resources connected to the application.




(*E.g.*, https://trustwise.ai/solutions/by-use-case/).

21. With respect to claim 2, the Trustwise AI Control Tower is configured to perform the step of selectively permitting the secure application to engage in the first application behavior. One example of when that can happen is when the output is not blocked or modified, but authorized. The example below from the Trustwise video shows the secure application selectively permitting the first application's behavior.



(*E.g.*, https://trustwise.ai/solutions/by-use-case/).




(*E.g.*, https://www.youtube.com/watch?v=Gp50-qZ0GmM&t=37s at 1:02).

22. With respect to claim 3, the Trustwise AI Control Tower performs the step of selectively permitting the secure application to engage in the first application behavior if predetermined criteria associated with the operation of the secure application are met. These predetermined criteria can include but are not limited to all circumstances where the behavior of the secure application is compliant. Examples of these include:

- PII is used properly and not exposed
- Standard policy frameworks are followed, such as the ones below:



(*E.g.*, https://trustwise.ai/product/compliance-standards/).

23. With respect to claim 2, the Trustwise AI Control Tower performs the step wherein the predetermined criteria can be based on a policy. The AI Control Tower is characterized by Trustwise as "policy-as-code."




(*E.g.*, https://trustwise.ai/product/compliance-standards/).




(*E.g.*, https://trustwise.ai/solutions/by-use-case/).

24. **<u>Indirect Infringement</u>**. On information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of claims 1-4 of the '418 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its

customers for use in a manner that Defendant knew infringed claims 1-4 of the ‘418 Patent. For example, Defendant provided marketing material and videos advertising that the Accused Instrumentality performs the claimed method of operating a secure application as claimed in claims 1-4 of the ‘418 Patent. (*Supra* ¶¶17-23 (identifying marketing materials and videos)).

25. On information and belief, since Defendant became aware of claims 1-4 of the ‘418 Patent and the infringement at least as of the date of the service of the Original Complaint, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user’s guides. Exemplary materials are cited above. (*Supra* ¶¶17-23 (identifying marketing materials and videos)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of claims 1-4 of the ‘418 Patent by its customers.

26. On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the Original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of claims 1-4 of the ‘418 Patent, and further knowing that the accused

use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶17-23 (identifying marketing materials and videos)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '418 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes claims 1-4 of the '418 Patent, Defendant knew that each such new use was made and adapted for infringement of claims 1-4 of the '418 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶17-23 (identifying marketing materials and videos)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

27. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '418 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

28. Unless a preliminary and permanent injunction are issued enjoining Defendant and all others acting in active concert therewith from infringing the '418 Patent, Plaintiff will be greatly and irreparably harmed.

29. Plaintiff is only asserting a method claim and as such the marking requirements of 35 U.S.C. §287(a) do not apply. *Crown Packaging Technology, Inc. v. Rexam, Beverage Can Co.*, 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. §287(a) does not apply."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed.Cir. 1983) ("It is 'settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method.'" (*Quoting Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir. 1983)). Plaintiff has therefore complied with the marking requirements of 35 U.S.C. §287(a).

## V. JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that claims 1-4 of United States Patent No. 9,135,418 have been infringed and are being infringed, either literally and/or under the doctrine of equivalents, directly and/or indirectly, by Defendant;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c. That Defendant be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

October 22, 2026

DIRECTION IP LAW

/s/Steven G. Kalberg
David R. Bennett (IL Bar No.: 6244214)
Steven G. Kalberg (IL Bar No.: 6336131)
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Attorneys for Plaintiff*
*Congruent Media Resourcing LLC*